UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MARTIN MONICA,<br><br>    Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, et al.,<br><br>    Defendants. | Case No. 17-cv-05103-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 8 |

## INTRODUCTION

Martin Monica filed a *quo warranto* application for the removal of Laurie Smith, the Sheriff of Santa Clara County.[1] He claims that Sheriff Smith unlawfully took office and continues to serve as Sheriff despite residing outside of Santa Clara County.[2] When the Attorney General of California refused to pursue *quo warranto* proceedings to oust Sheriff Smith at Mr. Monica's behest, Mr. Monica sued the Attorney General and the State of California.[3] They move to dismiss the complaint under Federal Rule of Civil Procedure Rule 12(b)(6).[4] The court holds that Mr. Monica does not state plausible claims where relief can be granted because his claims are barred by the

---

[1] *See generally* Compl. – ECF No. 1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] *See id.* at 8 (¶ 51), 15.

[3] *See id.* at 6–9.

[4] *See* Motion – ECF No. 8-1.

ORDER – No. 17-cv-05103-LB

Eleventh Amendment and the applicable statutes of limitations. The court grants the motion to dismiss the complaint without leave to amend.

**STATEMENT**

Mr. Monica alleges Sheriff Smith unlawfully holds public office because she is not domiciled in Santa Clara County.[5] Mr. Monica wanted to pursue *quo warranto* proceedings to challenge Sheriff Smith's unlawful holding of public office.[6]

In a cover letter dated January 11, 2014, Mr. Monica purported to enclose for the Attorney General his application for consent to pursue a *quo warranto* action, including a proposed complaint, verified statement of facts, memorandum of points and authorities, and notice to the proposed defendant.[7] He attaches the documents he submitted to his present complaint.[8] These documents include a complaint with an unsigned verification,[9] a statement of facts without verification or signature,[10] a memorandum of points and authorities,[11] and an unsigned declaration[12] to which he attached various public records, online directory search results, police reports, news articles, real estate records, and election filings that he believes show that Sheriff Smith resides in South Lake Tahoe and not in Santa Clara County.[13]

The Office of the Attorney General sent Mr. Monica a letter stating that it received his materials "[o]n or about February 3, 2014," identifying deficiencies in the documents he submitted, suggesting that he seek the assistance of an attorney, and stating that it "will reconsider

---

[5] Compl. – ECF No. 1 at 6 (¶¶ 36–37), 8 (¶ 51).

[6] *Id.* at 6 (¶ 41).

[7] Compl., Ex. 1– ECF No. 1-5 at 3 (cover letter); Compl., Exs. 2–4, ECF No. 1-5 at 5–47 (application materials).

[8] Compl. – ECF No. 1 at 6 (¶ 41).

[9] Compl., Ex. 2 – ECF No. 1-5 at 5–9.

[10] Compl., Ex. 3 – ECF No. 1-5 at 11–21.

[11] Compl., Ex. 4 – ECF No. 1-5 at 23–47.

[12] Compl., Ex. 5 – ECF No. 1-6 at 2–12.

[13] Compl., Exs. 6–36 – ECF Nos. 1-6, 1-7, 1-8, 1-9, 1-10, 1-11.

the matter if these deficiencies are corrected, and [the application] is resubmitted over the signature of an attorney."[14] The letter stated that Mr. Monica's application was deficient because his complaint sought to change venue to San Francisco County without good cause and asked to appoint him as Sheriff in Sheriff Smith's place. His complaint also contained irrelevant allegations about wrongdoing by Sheriff Smith, her spouse, and her daughter, including allegations relating to improper tax exemptions and misconduct in office that were beyond the scope of Sheriff Smith's domicile and residence.[15]

Mr. Monica does not allege he submitted a revised application, but he claims the defendants wrongfully rejected his request to pursue a *quo warranto* action because his evidence shows that Sheriff Smith unlawfully holds public office despite residing in South Lake Tahoe and not Santa Clara County.[16]

Mr. Monica asserts claims under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights (claims one and two), 42 U.S.C. § 1981 (claim three), the Supremacy Clause (claim four), and the Fifteenth Amendment (claim five).[17]

## GOVERNING LAW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

---

[14] Compl., Ex. K – ECF No. 1-4 at 44–45.

[15] *Id.*

[16] Compl. – ECF No. 1 at 6 (¶¶ 37–42), 8 (¶ 51).

[17] *Id.* at 10–15 (¶¶ 66–110). Mr. Monica does not designate his claims for violation of the Supremacy Clause and the Fifteenth Amendment as § 1983 claims. A "[p]laintiff has no cause of action directly under the United States Constitution." *Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992). He or she "must utilize 42 U.S.C. § 1983." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Therefore, the court liberally construes these claims as § 1983 claims for purposes of this motion. *See, e.g.*, *Darkins v. Snowden*, 649 F. App'x 492, 492–93 (9th Cir. 2016) (district court properly dismissed bare constitutional claims liberally construed as § 1983 claims for failure to plead a plausible claim).

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**ANALYSIS**

The defendants advance three arguments in support of their motion to dismiss. First, they argue that Eleventh Amendment immunity precludes Mr. Monica's claims against the State of California.[18] Second, they argue that Mr. Monica fails to plead plausible claims.[19] Finally, they argue that the applicable statutes of limitations bar Mr. Monica's claims.[20]

**1. Eleventh Amendment Immunity**

The first issue is whether the Eleventh Amendment bars Mr. Monica's claims against the State

---
[18] Motion – ECF No. 8-1 at 18.

[19] *Id.* at 13–16.

[20] *Id.* at 12–13.

of California. It does. The defendants point out that the Eleventh Amendment bars a lawsuit against a state or its instrumentalities absent the state's consent or abrogation of immunity by Congress.[21] *Papasan v. Allain*, 478 U.S. 265, 276–77 (1986). "This bar exists whether the relief sought is legal or equitable." *Id.* Section 1983 did not abrogate a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). California has not waived its immunity generally for Section 1983 claims like the ones here. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).

Although the defendants do not specifically address Mr. Monica's claim under Section 1981, the Ninth Circuit has held that states are immune from suit (absent waiver) and that, in fact, "§ 1981 does not contain a cause of action against states." *Pittman v. Oregon Emp't Dep't*, 509 F.3d 1065, 1071, 1074 (9th Cir. 2007); *accord Binum v. Warner*, 314 F. App'x 914, 914–15 (9th Cir. 2008) (plaintiff could not sue state agency or its official under Section 1981). Mr. Monica cannot assert a Section 1981 claim against the State of California.

As for the Attorney General in his official capacity, *Ex parte Young* allows some lawsuits for prospective declaratory and injunctive relief against state officers sued in their official capacities to enjoin an ongoing violation of federal law. *See* 209 U.S. 123, 156–57 (1908). While it is not obvious that the injunctive relief Mr. Monica seeks is prospective, Mr. Monica raises the *Ex parte Young* exception as grounds to sue Attorney General Xavier Becerra.[22] The *Ex parte Young* exception removes official capacity from a state official so they can face the "consequences of [their] individual conduct." *See* 209 U.S. at 160. But Mr. Becerra's individual conduct has no relation to the *quo warranto* application filed by Mr. Monica because the decision to not pursue the proceedings was made well before Mr. Becerra was elected to office. Furthermore, Mr. Monica has not identified any behavior of Mr. Becerra that would qualify for this exception.

The Eleventh Amendment bars Mr. Monica's Section 1983 claims against the State of California.

---

[21] Motion – ECF No. 8-1 at 18.

[22] Opposition – ECF No. 18 at 8.

## 2. Plausibility of Claims

### 2.1 Section 1983 Claims

The second issue is whether Mr. Monica states plausible Section 1983 claims. He does not. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). The focus of the defendants' motion, and thus the analysis here, is whether Mr. Monica alleges a plausible violation of his constitutional rights or federal law.

#### 2.1.1 Fourteenth Amendment

Mr. Monica's first two claims for relief are for violations of his right to equal protection and procedural due process under the Fourteenth Amendment,[23] which states in Section 1 that:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

##### 2.1.1.1 Equal Protection

The issue here is whether Mr. Monica plausibly claims a violation of the equal protection clause of the Fourteenth Amendment. He does not. "The equal protection clause forbids the establishment of laws which arbitrarily and unreasonably create dissimilar classifications of individuals when, looking to the purpose of those laws, such individuals are similarly situated." *Williams v. Field*, 416 F.2d 483, 486 (9th Cir. 1969). Mr. Monica does not claim the statute governing *quo warranto* proceedings is discriminatory on its face. *See* Cal. Civ. Proc. Code § 803.

"[The equal protection clause] also forbids unequal enforcement of valid laws, where such unequal enforcement is the product of improper motive." *Williams*, 416 F.2d at 486. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to

---

[23] *See* Compl. – ECF No. 1 at 10–12 (¶¶ 66–87).

discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)); *accord Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). A plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998); *accord, e.g.*, *Caddell v. Helena Elder Hous., Inc.*, 494 F. App'x 809, 810 (9th Cir. 2012) (mem.) ("The district court properly dismissed . . . equal protection claims . . . because [the plaintiff] failed to allege facts demonstrating a discriminatory intent."); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000) (per curiam) (holding that, even as a "class of one," the plaintiff must allege intentional, disparate treatment). "[B]are assertions" and "conclusory allegations" of discrimination will not suffice. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (discussing *Iqbal*, 556 U.S. at 680–81); *accord Rogers v. Cnty. of Riverside*, 139 F.3d 907 (9th Cir. 1998) (mem.) (district court properly dismissed equal-protection claim when the plaintiff failed to plead facts showing discriminatory intent).

Here, Mr. Monica pleads only bare assertions and conclusory allegations that he was denied equal protection.[24] He does not allege facts to support those allegations. For example, Mr. Monica does not allege that the defendants intentionally treated him differently when he requested that the Attorney General pursue a *quo warranto* action or that he was treated differently at all. The complaint is also silent as to any discriminatory intent. Consequently, because Mr. Monica does not state a plausible Section 1983 claim based on a denial of equal protection, the court dismisses this claim.

### 2.1.1.2 Procedural Due Process

To state a procedural-due-process claim, the plaintiff must allege the government deprived him or her of a protectable liberty or property interest and denied him or her adequate procedural

---

[24] *See, e.g.*, Compl. – ECF No. 1 at 12 (¶¶ 83–85) ("Defendants denied Plaintiff an equal opportunity . . ."; "Plaintiff's right to equal protection of the laws under the Fourteenth Amendment . . . was violated by this denial of equal access to a remedy."; "denial of the right remedy — quo warranto — is a denial of equal protection of the law . . . .")

ORDER – No. 17-cv-05103-LB 7

protections. *See Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). The threshold inquiry is whether the plaintiff has "'a legitimate claim of entitlement' as opposed to a 'unilateral expectation' or an 'abstract need or desire. . . .'" *Id.* (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). If the plaintiff satisfies this threshold burden, the court then considers whether he or she received all the process that was due. *Id.* at 589. For a liberty interest, the court has broadly construed liberty under the Fourteenth Amendment to cover "the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective." *Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1954). For a property interest, the court considers "all the process that he [or she] was 'due'" by weighing "(1) [the plaintiff's] private property interest, (2) the risk of an erroneous deprivation of such interest through the procedures used, as well as the value of additional safeguards, and (3) the Government's interest in maintaining its procedures, including the burdens of additional procedural requirements." *Foss*, 161 F.3d at 589.

In opposition to the motion to dismiss, Mr. Monica refers to a deprivation of liberty and suggests that was the aim of his Fourteenth Amendment claim. Mr. Monica has never alleged any restriction of his personal conduct and instead alleges only governmental inaction on his deficient *quo warranto* application. Because he pleads no facts to support a deprivation-of-liberty claim, the court will look to whether a property interest is the source of the due-process claim.

Mr. Monica does not identify any property interest. Instead he merely expresses his unilateral desire to oust and replace Ms. Smith. But as the Ninth Circuit has explained, "a losing candidate in a state election . . . has no property interest in the elected position." *D'agostino v. Delgadillo*, 111 F. App'x 885, 886 (9th Cir. 2004). Moreover, "California provides an adequate procedure to satisfy procedural due process" — a *quo warranto* action — to challenge "any person allegedly holding or exercising public office unlawfully." *Id.* (citing Cal. Civ. Proc. Code § 803). And so Mr. Monica cannot state a procedural-due process claim based on his desire to hold public office.

Mr. Monica otherwise alleges that he has a protectable interest in the Attorney General's consent to *quo warranto* proceedings. But California Code of Civil Procedure § 803 does not explicitly grant a private party the right to obtain consent to pursue and participate in *quo*

*warranto* proceedings; rather, it vests the Attorney General, in the absence of a direct order from the governor, with the authority to decide whether to pursue *quo warranto* proceedings based on a "reasonable belief" standard. Courts have interpreted Section 803 as giving the Attorney General broad discretion, subject to judicial intervention only in the event a refusal is "extreme and clearly indefensible." *Lamb v. Webb*, 91 P. 102, 104 (Cal. 1907). Moreover, once commenced, the Attorney General may "withdraw, discontinue or dismiss the [action], as to him [or her] may seem fit and proper. . . ." Cal. Code Regs. tit. 11, § 8. No court has recognized a protectable interest in consent to or maintenance of *quo warranto* proceedings. Indeed, the Ninth Circuit has held that a plaintiff does not possess a protectable interest in maintaining a *qui tam* action, which, like a *quo warranto* action, is brought and pursued on behalf of the public by the government. *See United States ex rel. Mateski v. Mateski*, 634 F. App'x 192, 195 (9th Cir. 2015); *see also Brooks v. Dunlop Mfg., Inc.*, No. 10-CV-04341-CRB, 2011 WL 6140912, at *6 (N.D. Cal. Dec. 9, 2011) (relator did not acquire constitutionally-protected interest in *qui tam* litigation). In sum, Mr. Monica does not allege he possesses a protectable interest in the Attorney General's decision on whether to pursue a *quo warranto* action.

Furthermore, Mr. Monica fails to allege facts showing the procedures leading up to the Attorney General's decision were inadequate. He alleges in a conclusory manner that "[u]pon information and belief, no appreciable procedure was observed at any time leading up to Defendant's promulgation of the Quo Warranto Denial."[25] Yet, "[t]he Attorney General has an established procedure, embodied in regulations, for approving applications by private parties for leave to sue in quo warranto." *Nicolopulos v. City of Lawndale*, 91 Cal. App. 4th 1221, 1229 (2001). A person instigating a *quo warranto* claim must first serve an application on the proposed defendant and file it with the Attorney General within five days. Cal. Code Regs. tit. 11, § 1. The application must include:

> (a) Original verified complaint, together with one copy thereof, and a verified statement of facts. The proposed complaint shall be prepared for the signature of the Attorney General, a deputy attorney general and the attorney for the relator, as

---

[25] Compl. – ECF No. 1 at 10 (¶ 67).

ORDER – No. 17-cv-05103-LB              9

attorneys for plaintiff.

(b) Points and authorities showing why the proposed proceeding should be brought in the name of the people, and supporting the contention of relator that a public office or franchise is usurped, intruded into or unlawfully held or exercised by the proposed defendant.

(c) A notice directed to the proposed defendant to the effect that relator is about to apply to the Attorney General for "leave to sue" in the proceeding therein named, and that the proposed defendant may, within the period provided in Section 3 hereof, show cause, if any he have, why "leave to sue" should not be granted in accordance with the application therefor.

(d) Proof of service of such application, complaint, statement of facts, points and authorities and notice upon the proposed defendant.

*Id.* § 2. The regulations then provide the proposed defendant with an opportunity to show cause why the Attorney General should not commence the proceedings and the relator an opportunity to respond. *Id.* §§ 3, 4.

Mr. Monica attaches documents to the complaint that show he knew of these procedures and that contradict his allegation that the Attorney General observed "no appreciable procedure."[26] In a cover letter dated January 11, 2014, Mr. Monica purported to enclose for the Attorney General his application, proposed complaint, verified statement of facts, memorandum of points and authorities, and notice to the proposed defendant.[27] He attaches the documents he submitted to his present complaint.[28] These documents include a complaint with an unsigned verification,[29] a statement of facts without verification or signature,[30] a memorandum of points and authorities,[31] and an unsigned declaration[32] to which he attached various public records, online directory search results, police reports, news articles, real estate records, and election filings that he believes show that Sheriff Smith resides in South Lake Tahoe and not in Santa Clara County.[33] He does not

---

[26] Compl. – ECF No. 1 at 10 (¶ 67).

[27] Compl., Ex. 1– ECF No. 1-5 at 3 (cover letter).

[28] Compl. – ECF No. 1 at 6 (¶ 41).

[29] Compl., Ex. 2 – ECF No. 1-5 at 5–9.

[30] Compl., Ex. 3 – ECF No. 1-5 at 11–21.

[31] Compl., Ex. 4 – ECF No. 1-5 at 23–47.

[32] Compl., Ex. 5 – ECF No. 1-6 at 2–12.

[33] Compl., Exs. 6–36 – ECF Nos. 1-6, 1-7, 1-8, 1-9, 1-10, 1-11.

ORDER – No. 17-cv-05103-LB          10

allege or attach to the complaint a notice to Sheriff Smith, or proof that he served Sheriff Smith with these documents. In fact, the Attorney General's letter rejecting the *quo warranto* application states that Sheriff Smith will not be required to respond because of the deficiencies in Mr. Monica's application. Furthermore, Mr. Monica does not allege he attempted to cure the deficiencies after the Attorney General's office rejected the application.

In sum, Mr. Monica does not allege facts showing an absence of procedural safeguards. Furthermore, he does not allege the procedures in the California Code of Regulations are unconstitutional or that the Attorney General effectively denied him due process by failing to adhere to those procedures.

Mr. Monica's grievance is not with the process: it is with the outcome. Mr. Monica disagrees with the Attorney General, alleging that he is "mistaken" and that his reasons for not pursuing the *quo warranto* action are "flawed."[34] But the complaint and accompanying exhibits show that the *quo warranto* application was rejected because it was deficient, not because of the merits of the application. Mr. Monica never claimed he submitted a code-compliant application or remedied the deficiencies identified in his application. If Mr. Monica had, and the application was again rejected, a state mandamus action (as opposed to an action in federal court) would be the appropriate process to pursue any remedy. As the Ninth Circuit has explained, "an arbitrary denial of permission by the Attorney General can be challenged in a state mandamus action." *D'agostino*, 111 F. App'x at 887 (holding the plaintiff failed to state a procedural-due-process claim based on Attorney General's declination to pursue *quo warranto* action); *see also Tomlinson v. Cnty. of Monterey*, No. 07-CV-0990-RMW, 2007 WL 2298038, at *2 (N.D. Cal. Aug. 8, 2007) (mandamus proceedings "are uniquely in the interest and domain of state courts") (internal quotations and citations omitted). Mr. Monica does not allege the application process for state mandamus proceedings are in any way inadequate. He merely concludes without providing rationale "[t]he idea . . . is flawed[.]"[35]

---

[34] Compl. ECF No. 1 at 8 (¶ 52).

[35] Opp. – ECF No. 18 at 5.

ORDER – No. 17-cv-05103-LB    11

In sum, because Mr. Monica does not state any plausible procedural-due-process claim, the court dismisses this claim.

### 2.1.2 Supremacy Clause

Mr. Monica alleges that the defendants refused to accept his evidence in support of his *quo warranto* application, "fail to understand what constitutes evidence," and required him to get the assistance of a lawyer.[36] He claims that this "was making a judicial decision" and that "[t]he decision above violates the Supremacy Clause . . . ."[37] "[T]he Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action." *Armstrong v. Exceptions Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) (internal quotations and citations omitted). Rather, "[i]t instructs courts what to do when state and federal law clash . . . ." *Id.* Although courts often apply the Supremacy Clause and consider whether federal law preempts state law, it does not give rise "to a cause of action for its violation." *Id.* at 1384. For this reason, and because Mr. Monica does not allege any federal law that preempts any particular state statute, he does not plead a plausible claim for violation of the Supremacy Clause.

### 2.1.3 Fifteenth Amendment

"The Fifteenth Amendment commands that the right to vote shall not be denied or abridged on account of race or color, and it gives Congress the power to enforce that command." *Shelby Cnty., Ala. v. Holder*, 133 S. Ct. 2612, 2629 (2013). It prohibits race-based voting restrictions. *See, e.g.*, *Davis v. Commonwealth Election Comm'n*, 844 F.3d 1087, 1088 (9th Cir. 2016). Mr. Monica does not identify any race-based voting restrictions in the complaint. He simply concludes that the Attorney General's rejection of his application "opened the door to influencing the election by permitting [an] unqualified candidate for the office of Santa Clara County Sheriff."[38] Because Mr. Monica does not allege any restrictions on voting, there is no plausible violation of the Fifteenth Amendment.

---

[36] Compl. ECF No. 1 at 13–14 (¶¶ 98–101).

[37] *Id.* at 14 (¶¶ 101–02).

[38] Compl. – ECF No. 1 at 14 (¶ 106).

### 2.2 Section 1981 Claim

The issue here is whether Mr. Monica has stated a plausible Section 1981 claim. He has not. This statute prohibits racial discrimination. *Pittman*, 509 F.3d at 1068. Mr. Monica does not allege any racial discrimination. He states that the defendants violated Section 1981 by "denying Quo Warranto evidence to be presented to a court . . . ."[39] But Section 1981 does not grant an individual a categorical right to give evidence or, as Mr. Monica suggests, to pursue a *quo warranto* action. *See Runyon v. McCrary*, 427 U.S. 160, 168 (1976). It states that individuals of color have the right to make and enforce contracts and give evidence "on equal terms with whites." *Id.* at 170–71. Mr. Monica's interpretation of Section 1981 is not cognizable. Because he does not allege any racial discrimination, he does not state a plausible claim under Section 1981.

### 3. Statutes of Limitations

The final issue is whether, as the defendants argue, all of Mr. Monica's claims are barred by the applicable statutes of limitations. They are.

"In determining the proper statute of limitations for actions brought under 42 U.S.C. § 1983, [courts] look to the statute of limitations for personal injury actions in the forum state." *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). The Ninth Circuit has held that California's two-year "statute of limitations for personal injury actions applies to § 1983 actions in federal court." *Id.* (citing Cal. Civ. Proc. Code § 335.1). Mr. Monica's Section 1983 claims, asserted for the first time in 2017, more than two years after the Attorney General rejected his application in 2014, are time barred.

With respect to Mr. Monica's Section 1981 claim, the applicable statute of limitations depends on whether his claim arises from the statute as originally enacted or as amended in 1991. *See Johnson v. Lucent Tech., Inc.*, 653 F.3d 1000, 1006 (9th Cir. 2011). Mr. Monica's § 1981 claim is based on the right to give evidence. This basis predates the 1991 amendments that once again made it possible to assert employment retaliation claims under Section 1981. *Id.* Consequently,

---

[39] *Id.* at 13 (¶ 93).

California's two-year statute of limitations for personal injury actions applies, *see id.*, and the four-year, catch-all statute of limitations applicable to claims "arising under an Act of Congress enacted after" 1990 does not apply. *See* 28 U.S.C. § 1658. Mr. Monica argues in opposition to the motion to dismiss that the statute of limitations does not apply to *quo warranto* proceedings, and therefore should not apply to his claims.[40] But Mr. Monica's claim arises from the rejection of his *quo warranto* application and is not itself a *quo warranto* claim. The Attorney General rejected Mr. Monica's *quo warranto* application in 2014, and so his 2017 claim under Section 1981 is barred by the statute of limitations.

## CONCLUSION

In conclusion, because Mr. Monica does not plead any plausible claims, and his claims are otherwise barred by the Eleventh Amendment and the applicable statutes of limitations, the court grants the motion to dismiss. The court dismisses the complaint without leave to amend because Mr. Monica cannot cure the complaint's deficiencies.

**IT IS SO ORDERED.**

Dated: November 16, 2017

_____
LAUREL BEELER
United States Magistrate Judge

---

[40] Opposition – ECF No. 18 at 4.